Gene H. Shioda, Bar No. 186780
James A. Kim, SBN 220763
LAW OFFICE OF GENE H. SHIODA
5757 West Century Blvd., Suite 700
Los Angeles, CA 90045
Telephone: (310) 348-7222
Facsimile: (310) 348-7220

**Attorney for Plaintiff:**
**VICKI MYERS**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI MYERS, an individual,<br><br>Plaintiffs,<br><br>vs.<br>BROOKDALE SENIOR LIVING, INC., a Delaware corporation; and DOES 1 to 50, Inclusive,<br><br>Defendants. | ) Case No.<br><br>) COMPLAINT FOR DAMAGES:<br><br>)    1. Constructive Wrongful Termination;<br>)    2. Retaliation;<br>)    3. Unfair Bus. Practices<br>)    4. Hostile Work Environment<br>)    5. Age Discrimination<br>)<br>) AND DEMAND FOR JURY TRIAL.<br>) |

## COMPLAINT

COMES NOW Plaintiff VICKI MYERS, an individual ("Plaintiff"), through her undersigned counsel of record, and in her Complaint against BROOKDALE SENIOR LIVING, INC., a Delaware corporation; and DOES 1 to 50, Inclusive, (collectively, the "Defendants"), alleges as follows:

**1**
**COMPLAINT FOR DAMAGES**

## I. THE PARTIES

1. Plaintiff VICKI MYERS is an individual residing in Sonoma County, State of California.

2. Defendant BROOKDALE SENIOR LIVING, INC. ("BROOK") is and was at all relevant times alleged herein, an a corporation existing under the laws of the State of Delaware, doing business in the Sonoma County, State of California.

3. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant DOES 1 through 50, inclusive, are unknown to Plaintiff who therefore sues said defendants, and each of them, by such fictitious names, and Plaintiff will seek leave of court to amend this complaint to allege such true names and capacities, when ascertained.

4. Along with the named defendants, each DOE Defendant is in some manner responsible for and proximately caused Plaintiff's damages as alleged herein. Plaintiff reserves the right to amend this complaint when their names and capacities become known through discovery.

5. Plaintiff is informed and believes, and thereon alleges, that each named and unnamed defendant was the agent, employee, joint-venturer and co-conspirator of each other named and unnamed defendant, who, while acting, omitting to act, representing, misrepresenting, concealing and conspiring was acting both for his/her or its individual benefit and advantage, as well as acting, omitting to act, representing, misrepresenting, concealing and conspiring for the benefit of some or all of the other defendants, within the course and scope of said employment, agency, joint venture and conspiracy, with the knowledge, consent, approval and ratification of the other defendants, and each of them.

## II. JURISDICTION & VENUE

6. The obligations hereinafter mentioned were entered into and incurred by Defendants within the jurisdictional limits of the above-captioned Court, which Court is the proper place of the trial of this action and the Court has jurisdiction based on diversity of citizenship as well supplemental jurisdiction based on the claims.

**COMPLAINT FOR DAMAGES**

7. The obligation, which is the subject matter of this action, occurred and to be performed within the jurisdictional boundaries of this Court, and this Court is the proper court for the trial of this action.

8. Plaintiff filed a complaint with EEOC for hostile work environment, discrimination, and retaliation.

9. A Right-To-Sue Letter was issued to the Plaintiff by EEOC. The letter is attached hereto as Exhibit 1.

### III.  UNDERLYING FACTS

10. Plaintiff is a physical therapist, licensed in California by the Physical Therapy Board of California since 1981 to the present. As a licensed physical therapist, Plaintiff is qualified to provide physical therapy to persons in California and must comply with statute and regulations governing her profession.

11. The activities governed by statute, regulations, and regulatory body like the Physical Therapy Board, include both physical therapy as treatment, and physical therapy evaluation, treatment planning, instruction and consultative services

12. As a licensed physical therapy, Plaintiff is under a legal duty to provide, refer, evaluate, and instruct based on medical necessity and Plaintiff is prohibited from practicing physical therapy on the basis of personal interest, including promoting her employer, pecuniary incentive, or any other non-medical basis.

13. Defendant BROOK was the employer of Plaintiff for the relevant time period alleged herein. Plaintiff commenced her employment with BROOK on or about October 20, 2014. Plaintiff was employed by BROOK to provide physical therapy care at its various facilities, specifically, to provide physical therapy evaluation, treatment planning, instruction and consultative services, for its patients and elderly community.

14. Defendant BROOK was formed in June 28, 2005, and is a publicly traded corporation that provides services to the elderly through facilities located in urban and suburban areas of

**COMPLAINT FOR DAMAGES**

major markets in the United States, including services through its facilities located within the State of California.

15. Plaintiff was hired as a an ancillary service manager, and her job duties included managing the rehab staff of Physical Therapists (PT), Occupational therapist (OT), and Speech therapist (ST). As part of her assignment within BROOK's senior living division, Plaintiff was assigned responsibilities for three facilities in California: Brookdale Paulin Creek located in Santa Rosa, California, Brookdale Chanate located in Santa Rosa, California, and Brookdale Windsor located in Windsor, California all in Sonoma County.

16. These facilities provide independent living, assisted living and Alzheimer's care. In 2015, Plaintiff was assigned additional work assignments for the BROOK facility at Brookdale Fountaingrove located in Santa Rosa, California in Sonoma County.

17. As part of her work responsibilities, Plaintiff was assigned the task of was to educate everyone to Brookdale Home Health services and liaison with the management team in these facilities. Plaintiff was also asked to attend the CCR (continuing care review). The CCR was attended by department managers in the building including the Executive Director, Resident Program Manager, Sales Manager, Maintenance Manager, Alzheimer's unit manager, Health and Wellness Director for assisted living and Dining Room manager. Plaintiff was also instructed that if a resident of one of these communities was having difficulties with walking, balance, memory, etc. Plaintiff was to follow-up with the resident and see if our healthcare division could assist them in some way by providing services through physical therapists and nurses.

18. Sometime in the first couple of months, Plaintiff's job title was discontinued and all ancillary service managers became healthcare service managers (HSM). Plaintiff's job description changed, which focused less on the rehabalitation staff management and more on marketing.

19. Plaintiff's supervisors began focusing Plaintiff's work efforts in building patient census goals and targets set by BROOK to enroll patients with difficulty with walking with Medicare for therapy with BROOK's Home Health services even if it was not medically necessary.

**COMPLAINT FOR DAMAGES**

20. In order to meet census goals and targets set by BROOK, Plaintiff was instructed to make courtesy visits as follow ups with patients suffering problems with walking, in order to screen them for eligibility and encourage the patients to select BROOK Home Health services as a provider for their therapy.

21. Plaintiff informed her supervisors on several occasions of her concern that services were being driven by census goals instead of clinical need, but was informed to continue her courtesy visits.

22. During her work marketing BROOK Home Health services, BROOK facilities began suffering high turnover as many therapists resigned.  Plaintiff communicated the concerns of therapists with the screening process, but no action was taken to address these concerns and therapists continued to resign and BROOK facilities and thus faced shortages in the available therapists.

23. In response to the shortage of available therapists, BROOK began instructing Plaintiff to place patients into occupational therapy or nursing services, instead of physical therapy.  Qualifying patients for occupational and nursing services avoided the need for physical therapists, and permitted BROOK to still provide for services.  BROOK staff were informed not to use terms that related to physical therapy to avoid the need of physical therapists.

24. Physical therapists complained that patients were not receiving necessary care, from a physical therapy perspective, and more therapists resigned; leaving some BROOK facilities with no physical therapists available to provide care to patients.

25. During this time, Plaintiff tried multiple times to tell her supervisors, administrator Maryanne Brady , the interim Director of nursing, Valys Law, the clinical nurse manager, Jennifer Goodman, and her counterpart , Elizabeth Gomes, that BROOK was providing a disservice to patients as their Physical Therapy needs were not being met.

26. In response to Plaintiff's attempts to warn BROOK of the patient care issues caused by the lack of physical therapy care, Plaintiff's immediate supervisor, Adam Khalifa, restated BROOK's mission statement and said that patients needing physical therapy would be referred to outside agencies to meet their healthcare needs.

27. However, patients were still being referred to BROOK Home Health for occupational therapy, and patients were not being referred to outside agencies for their physical therapy needs.

**COMPLAINT FOR DAMAGES**

Plaintiff informed her immediate supervisor that BROOK was continuing its efforts in diverting patients needing physical therapy to occupational therapy and were not being referred to outside agencies to meet their healthcare needs. No response was given to these concerns.

28. Because of the lack of response, and the ongoing failure to properly refer patients to physical therapy, and in accordance with the policies and procedures of BROOK, Plaintiff filed a report within BROOK's internal compliance department on April of 2015.

29. Plaintiff was contacted by the vice president of compliance department, Lance Blackwood, who confirmed facts set forth in the report, and also acknowledged that occupational therapy was being overused. The report and her identity were to be handled confidentially to avoid any negative job action to employees who reported problems.

30. From the time Plaintiff made the report with the compliance department, Plaintiff began experiencing hostility from her management. Plaintiff was asked to attend a meeting with other managers, including her immediate supervisor, along with the other managers, Maryanne Brady, Elizabeth Gomes, and telephonically with Valys Law, (interim Director of Clinical Services). Adam said the office culture was broken and his team needed to unite and develop a culture that was an example to staff.

31. At the meeting, it became apparent to Plaintiff that the other managers were aware of her report with the compliance department, and that her identity was not kept confidential. Several of the attending managers expressed their anger that Plaintiff had filed the report with compliance. During this meeting, Valys Law admitted she was angry because she was concerned that her RN license was jeopardized.

32. The work environment changed from trust to isolation. After the compliance issue, Adam expressed to Plaintiff that he did not trust her. After the meeting, Plaintiff was ignored by her supervisors and additional work was assigned to Plaintiff

33. Plaintiff was informed by Lance Blackwood from the compliance department that Plaintiff had to work out the problem with her immediate supervisor Adam.

34. Plaintiff was subjected to increased work scrutiny by increased visits and inspections by supervisors. Plaintiff also learned that her immediate supervisor had begun contacting physical

**COMPLAINT FOR DAMAGES**

therapists that had left BROOK to determine whether Plaintiff was the reason for the resignations and loss of physical therapists at the BROOK facilities.

35. Plaintiff went to Human Resource department at BROOK and lodged a retaliation complaint. After lodging the complaint, Plaintiff was contacted by Lance Blackwood and informed that he would meet with her.

36. Plaintiff's immediate supervisor was assigned a new boss, Paula Adams.  Ms. Adams and Mr. Blackwood met with Plaintiff and all of them agreed to put the past behind them while the issues addressed by Plaintiff regarding the physical therapy problem would be worked on as a team.

37. Even after the meeting, Plaintiff was ignored by her immediate supervisor and other supervisors, and Plaintiff was given the silent treatment, with co-workers and supervisors not talking to her or even exchanging greetings.  She was given the silent treatment.

38. Several weeks after the meeting, Plaintiff was informed by her supervisors that she had to "step up to the plate" and get on board with management.  Plaintiff responded to an email from Maryanne containing these warnings explaining that the comments were inappropriate and unprofessional.  Plaintiff was ordered to a meeting with Adam and Maryanne, where her supervisors angrily warned to work with management or Plaintiff would suffer consequences. Plaintiff was verbally threatened.

39. After this warning, Plaintiff was informed by Adam that their team was not meeting BROOK's performance measures because of the lack of patients enrolled with BROOK's Home Health services.  Plaintiff was ordered to find more patients. Plaintiff informed Adam that the remaining patients were healthy.

40. Plaintiff's supervisors called a meeting of staff without informing Plaintiff who did not attend and was unaware of the meeting.

41. Plaintiff was also reassigned to a new facility that was much further way in the hopes that she would resign.  As a result of the increased workload, the longer commute, the absence of any support from her supervisors, the open hostility of her supervisors against her, silent treatment from similar situated employees, and the unrealistic work demands by BROOK, Plaintiff

**COMPLAINT FOR DAMAGES**

eventually suffered severe anxiety, depression, and other emotional and physical conditions. Plaintiff was forced to take a medical leave of absence and was for a period of time, under a temporary disability.

42. On or about October 23, 2015, Plaintiff was placed on medical leave due to the negative treatment from Defendant.

43. Due to Plaintiff's whistle-blowing, Brook is held to at least $60,000.00 for medi-care improper billing.

44. Plaintiff left BROOK as she had no option but seek work elsewhere and was forced to resign.

## FIRST CAUSE OF ACTION

## CONSTRUCTIVE WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

45. Plaintiff incorporate by reference as though fully set forth herein each of the allegations of Paragraphs 1 through 43.

46. Plaintiff is a governed as a licensed physical therapist, by the Physical Therapy Board of California, laws and regulations, including the provisions of Bus. & Prof. Code Section, 2600, et seq.

47. Plaintiff is bound by Bus. & Prof. Code Section 2620.1 and Bus. & Prof. Code Section 17500, that prohibit evaluating and recommending patients for physical therapy unless patient has symptoms and conditions that require treatment within the practice of physical therapy; and continue physical therapy only if the patient progresses toward documented treatment goals as demonstrated by objective, measurable, or functional improvement, and if the patient has signs or symptoms that require treatment beyond the scope of physical therapy, to refer patient to the physician or other specialist for evaluation.

48. Business, financial interest of the individual therapist or the employer of the therapist is not a substitute for medical necessity. This serves an important public policy in healthcare and standards of care in the medical community, codified in Cal. Bus. & Prof. Code as it relates to all persons engaged in providing health care to the public.

**COMPLAINT FOR DAMAGES**

49. Physical therapy can only be provided by a licensed individual meeting the requirements for issuance by Physical Therapy Board of California, and the practice of physical therapy is limited to the activities and scope of practice

50. Plaintiff alleges that her employer Defendant BROOK retaliated against, and instated adverse job actions, including transferring Plaintiff to an unfavorable work location, disparagement, hostile work environment, and constructive termination, directly in response to and against Plaintiff's refusal to participate in conduct prohibited by statute, regulations, and the Physical Therapy Board, in her practice of physical therapy.

51. Plaintiff was at all relevant times, an employee of Defendant BROOK, was the target of adverse job action by Defendant BROOK and its employees; as a proximate cause of the adverse job actions by Defendant BROOK as employer, the employment relationship was actually terminated and constructively terminated.

52. When Defendant BROOK had insufficient personnel to provide physical therapy, Plaintiff was instructed to evaluate and recommend individuals to occupational therapy.

53. Plaintiff objected to these actions and refused to evaluate and promote care that was either medically unnecessary, or that violated her obligations as a licensed physical therapist.

54. Plaintiff reported the actions and her concerns with the internal compliance department of Defendant BROOK and with Human Resource Department.  Instead of maintaining confidentiality of her complaints, her supervisors were immediately informed and began expressing their dislike of Plaintiff and their displeasure with the reports filed by Plaintiff.

55. The constructive termination was in violation of fundamental public policy: It is the public policy of the State of California to encourage employees to notify an appropriate government or law enforcement agency, person with authority over the employee, or another employee with authority to investigate, discover, or correct the violation or noncompliance, and to provide information to and testify before a public body conducting an investigation, hearing or  inquiry, when they have reason to believe their employer is violating a state or federal statute, or violating or not complying with a local, state or federal rule or regulation.

9
**COMPLAINT FOR DAMAGES**

56. Defendant BROOK instructed and demanded Plaintiff that certain hard number targets were required to be evaluated and referred to BROOK's physical therapy business, by evaluating patients and nursing home community members for physical therapy, and by promoting BROOK's physical therapy business.  No exception or concern was permitted to excuse performance that failed to meet the targets set by Plaintiff's supervisors who were executing the plan communicated from the corporate headquarters.

57. Pursuant to California Labor Code Section 1102.5, employees are the protected class of individuals. "Employee" means any person employed by an employer, private or public, including, but not limited to, individuals employed by the state or any subdivision thereof, any county, city, city and county, including any charter city or county, and any school district, community college district, municipal or public corporation, political subdivision, or the University of California. [California Labor Code Section 1106]

58. An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from being a whistleblower.  An employer may not retaliate against an employee who is a whistleblower. An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or regulation. An employer may not retaliate against an employee for having exercised his or her rights as a whistleblower in any former employment.

59. Under California Labor Code Section 1102.5, if an employer retaliates against a whistleblower, the employer may be required to reinstate the employee's employment and work benefits, pay lost wages, and take other steps necessary to comply with the law.

60. Plaintiff was a member of the class protected under California Labor Code, as a whistleblower protected from adverse job actions related to her reporting of acts that constitute a violation of a state or federal statute, or a violation or noncompliance with a state, federal rule and regulation.

61. Defendant BROOK took adverse job actions against the Plaintiff in retaliation of her complaints lodged with the compliance department, and with HR department.

**10**
**COMPLAINT FOR DAMAGES**

62. Adverse job action includes subjecting Plaintiff to unreasonable performance standards, interviewing Plaintiff's co-workers to obtain facts to justify additional job actions, a silent treatment by Plaintiff's supervisors, publicly identifying Plaintiff as a problem and as the cause of departmental failure to meet performance goals, and by reassignment to a job site that was substantially further away from her residence.

63. As a direct and proximate result of the misconduct and unlawfulness of Defendants, and each of them, and the resulting constructive termination of Plaintiff's employment, as aforesaid, Plaintiff sustained severe and serious injury to her person, all to Plaintiff's damage in a sum to be shown according to proof.

64. By reason of the foregoing, Plaintiff has suffered harm including, but not limited to, humiliation, embarrassment, and mental anguish, all to Plaintiff's damage in an amount to be shown according to proof. Plaintiff is informed and believes, and thereon alleges, that she will be required to employ the services of physicians, nurses and other health care professionals in the future, in an amount to be shown according to proof.

65. By reason of the foregoing, as aforesaid, Plaintiff has been unable to engage in her employment for a time subsequent to her constructive termination, and Plaintiff is informed and believes and thereon alleges that she will be unable to work in her usual and customary employment for an indefinite period in the future, all to Plaintiff's damage in an amount to be shown according to proof.

66. Plaintiff is entitled to reinstatement from the date of constructive discharge to the present and Plaintiff is entitled to wages owed for that period of reinstatement in an amount to be proven at trial.

67. Plaintiff is informed and believes, and thereon alleges, that her termination by Defendants, and each of them, was done with an intent to cause injury to Plaintiff. As a consequence of the aforesaid oppressive, malicious and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof.

**SECOND CAUSE OF ACITN**

**RETALIATION**

**11**
**COMPLAINT FOR DAMAGES**

68. Plaintiffs incorporate by reference as though fully set forth herein each of the allegations of Paragraphs 1 through 67.

69. Defendants retaliated against Plaintiff for seeking accommodation and unpaid leave for his disabilities, in violation of FEHA provisions through the harassment and termination of the Plaintiff.

70. As a proximate result of the conduct of Defendant, Plaintiff has and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss, according to proof.

71. Plaintiff has and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue and anxiety.   The amount of Plaintiff's injuries will be ascertained at trial.

72. In committing the foregoing acts, Defendant has been guilty of oppression, fraud, and/or malice, under California Civil Code Section 3294, thereby entitling Plaintiff to recover punitive damages in a sum appropriate to punish and make an example out of the foregoing defendant.

73. The overt acts of discrimination, and the termination without justification, were done with the knowledge of Defendant BROOK's officers, owners, and directors.  Notwithstanding the advance knowledge, Defendant BROOK ratified, authorized, and approved of the discrimination in disregard for the rights of the Plaintiff and other persons similar to Plaintiff's age and whistleblowing.

74. FEHA provides for reasonable attorneys' fees and costs incurred by a prevailing plaintiff in an actio0n brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff is entitled to attorneys' fees and costs.

### THIRD CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES

**(Bus. & Prof. Code §§17200, et seq.)**

**COMPLAINT FOR DAMAGES**

75. Plaintiff incorporates by reference as though fully set forth herein each of the allegations of Paragraphs 1 through 74.

76. Plaintiff individually, and in the interest of the general public, is informed and believe and based thereon allege that Defendants, and each of them, engaged in the acts and omissions heretofore alleged for the purpose of depriving their employees of their weekly pay at the minimum wage rate as set by law. Plaintiffs, on behalf of the general public, are further informed and believe and based thereon allege that defendants, and each of them have also engaged in the acts and omissions heretofore alleged for the purpose of profiting from lower labor costs, employer taxes, workers compensation insurance, employer related expenses, and obtaining a deceitful, unlawful or unfair advantage and a scheme to engage in unfair competition, at the expense of the general public. Said conduct deceived the general public into believing Defendants were legitimate business and constitutes an Unfair Trade Practice and violates the Unfair Practices Act of the California Business and Profess ions Code, Section 17200 et seq.

77. Plaintiff, on behalf of the general public, is prosecuting this act ion in the interest of the general public, to maintain the integrity of public works projects, compliance with pubic9 works labor laws and to prevent and deter practices of Defendants, and each of them, which constitute an Unfair Trade Practice as required by California Business & Professions Code, section 17200 et seq.

78. Plaintiff is an aggrieved worker and therefore has standing to maintain this action.

79. As a proximate result of the above mentioned acts and omissions of Defendants, and each of them, as previously alleged, the general public and employees of Defendants, and each of them, have been damaged in an amount above the jurisdictional limits of this court.

80. Plaintiff is entitled to and therefore request an award of pre-judgment interest at the maximum legal rate.

81. Plaintiff has incurred, and will continue to incur attorney fees in the prosecution of this action and requests in addition to any other relief, reasonable attorneys fees and costs incurred.

**13**
**COMPLAINT FOR DAMAGES**

## FOURTH CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT

82. The allegations set forth in Paragraphs 1 through 81 are re-alleged and incorporated herein by reference.

83. At all times herein mentioned, California Government Code sections 12940 et seq. were in full force and effect and were binding on defendants. Within the time provided by law, plaintiff filed a complaint with the California Department of Fair Employment and Housing, in full compliance with these sections, and received a right to sue letter, thereby exhausting his available administrative remedies.

84. Plaintiff believes and thereon alleges her refusal to participate in business actions ordered by her employer, and in retaliation for her reporting of such acts, was the sole basis defendant's adverse actions, directed against him as set forth. Such actions are unlawful, discriminatory and retaliatory in violation of Government Code sections 12940 et seq., and have resulted in damages and injury to plaintiff, as alleged herein.

85. As a proximate result of defendants' willful, knowing and intentional discrimination against plaintiff, she sustained and continues to sustain substantial losses in earnings and other employment benefits and opportunities. Plaintiff has sought to mitigate such wage-related damages.

86. As a proximate result of the conduct of Defendant, Plaintiff has and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss, according to proof.

87. As a result of defendants' deliberate, outrageous and despicable conduct as alleged herein, plaintiff is entitled to an award of punitive and exemplary damages in an amount sufficient to punish and to deter such wrongdoing.

88. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

14

COMPLAINT FOR DAMAGES

## FIFTH CAUSES OF ACTION

### UNLAWFUL DISCRIMINATION BASED UPON AGE

89. Plaintiffs incorporate by reference as though fully set forth herein each of the allegations of Paragraphs 1 through 88.

90. Defendants discriminated against Plaintiff on the basis of her age in violation of ADEA/FEHA/Title VII through numerous acts, including but not limited to, those set forth in above and incorporated herein.

91. That age was a substantial factor in the way the Defendants treated and acted toward Plaintiff.

92. As a proximate result of the conduct of Defendants, Plaintiff has and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss, according to proof.

93. Plaintiff has and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue and anxiety.   The amount of Plaintiff's injuries will be ascertained at trial.

94. In committing the foregoing acts, Defendants are liable for oppression, fraud, and/or malice, under California Civil Code Section 3294, thereby entitling Plaintiff to recover punitive damages in a sum appropriate to punish and make an example out of the foregoing defendant.

95. The overt acts of discrimination were done with the knowledge of Defendants' officers, owners, and directors. Notwithstanding the advance knowledge, Defendants  ratified, authorized, and approved of the discrimination in disregard for the rights of the Plaintiff and other persons similar to Plaintiff's age.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendants as follows:

1.        For compensatory damages, including loss of wages, promotional opportunities, benefits and other opportunities of employment in amount greater than $150,000.00;

**COMPLAINT FOR DAMAGES**

2.      For mental and emotional distress damages;

3.      For an award of interest, including prejudgment interest, at the legal rate;

4.      For an award of prevailing party attorneys' fees;

5.      For punitive and exemplary damages in an amount sufficient to punish and deter defendant's outrageous conduct;

6.      For costs of suit incurred herein;

7.      For restitution in an amount to be proven at trial;

8.      For general and special damages in an amount to be proven at trial;

9.      For any other relief the Court deems proper.


REQUEST FOR JURY TRIAL

1.      Plaintiffs request a trial by Jury.


DATED: September 19, 2016                    Respectfully submitted,




                                             By: _____//s//_____
                                             Gene H. Shioda
                                             James A. Kim,
                                             Attorney for Plaintiff
                                             **VICKI MYERS**

**COMPLAINT FOR DAMAGES**

# EXHIBIT 1

EEOC Form 161 (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Vicki L. Myers<br>4120 Siskiyou Ave.<br>Santa Rosa, CA 95405 | From: San Francisco District Office<br>450 Golden Gate Avenue<br>5 West, P.O. Box 36025<br>San Francisco, CA 94102 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No | EEOC Representative | Telephone No. |
|---|---|---|
| 550-2016-00182 | Krystal L. Clark,<br>Investigator | (415) 522-3129 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice, or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____          06/22/2016
William R. Tamayo,                              (Date Mailed)
District Director

Enclosures(s)

cc:    Laurel Johnston
       Labor & Employment Administer
       BROOKDALE SENIOR LIVING INC.
       111 Westwood Place Suite 400
       Brentwood, TN 37027



**U.S. Equal Employment Opportunity Commission
San Francisco District Office**

450 Golden Gate Avenue
5 West, P.O. Box 30025
San Francisco, CA 94102
(415) 522-3000
TDD 1-800-669-6820
Fax (415) 522-3415
1-800-669-4000

Respondent: BROOKDALE HEALTH SERVICES
EEOC Charge No.: 550-2016-00182
FEPA Charge No.:

May 11, 2016

Vicki L. Myers
4120 Siskiyou Ave.
Santa Rosa, CA 95405

Dear Ms. Myers:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ X ]   Title VII of the Civil Rights Act of 1964 (Title VII)
[ ]   The Age Discrimination in Employment Act (ADEA)
[ ]   The Americans with Disabilities Act (ADA)
[ ]   The Equal Pay Act (EPA)
[ ]   The Genetic Information Nondiscrimination Act (GINA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

Please be aware that we will send a copy of the charge to California Department Of Fair Employment & Housing 2218 Kausen Drive Suite 100 Elk Grove, CA 95758 as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

The quickest and most convenient way to obtain the contact information and the status of your charge is to use EEOC's Online Charge Status System, which is available 24/7. You can access the system via this link (https://publicportal.eeoc.gov/portal) or by selecting the "My Charge Status" button on EEOC's Homepage (www.eeoc.gov). To sign in, enter your EEOC charge number, your zip code and the security response. An informational brochure is enclosed that provides more information about this system and its features.

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

Darlene G. Turner
Investigator Support Asst
(415) 522-3267

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s)